UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN EARNEST COOK | CIVIL ACTION |
| VERSUS | NO: 11-0112 |
| BAYOU TUGS, INC. | SECTION: "K" (4) |

## ORDER

Before the Court is a **Motion to Compel Functional Capacity Evaluation (R. Doc. 17)** filed by Defendant Bayou Tugs, Incorporated ("Defendant"), seeking an order from this Court requiring Plaintiff Steven Earnest Cook ("Plaintiff") to attend a functional capacity evaluation with Mr. Donald Kinnard on November 14, 2011 at 8:30 a.m.  Plaintiff opposes the motion. (R. Doc. 21.) The motion was heard with oral argument on Wednesday, October 26, 2011.

### I.    Factual Background

#### A.    Plaintiffs' Injury

Plaintiff filed this personal injury lawsuit against Defendant pursuant to the Jones Act, 46 U.S.C. § 30104, *et seq.*, and Seaman's Act, 28 U.S.C. § 1916. (R. Doc. 1, ¶ 4.) Plaintiff alleges he was a seaman and member of the crew on the *M/V Marie M. Morgan*, a vessel owned and operated by Defendant. (R. Doc. 1, ¶¶ 1, 6-8.) Plaintiff alleges that on December 5, 2010, the *M/V Marie M. Morgan* was hit by another vessel that was being moved by another employee. (R. Doc. 1, ¶ 8.) Plaintiff further alleges that the impact caused a refrigerator to fall on him, pinning him against the

cabinet counter top and the refrigerator. (R. Doc. 1, ¶ 8.) As a result, Plaintiff sustained injuries to his right knee. (R. Doc. 1, ¶ 8.) On January 7, 2011, Plaintiff had surgery on his left knee to reattach his petellar ligament.[1]

### B. Plaintiff's Treating Physician and Vocational Rehabilitation Expert Determine Plaintiff Cannot Perform the Work of a Tugboat Captain

On March 22, 2011, approximately two months after the surgery, Plaintiff's treating physician, Dr. Jose Rodriguez stated:

> To continue being a captain of a tugboat for the Coast Guard he needs to be able to squat and with this motion he cannot squat due to his left knee. He is unable to return to that type of gainful employment.

In July 2011, after six months of rehabilitation, Dr. Jose Rodriguez stated:

> From an orthopedic point of view, his stabilization of the knee is successful, but his knee will never be normal. This patient has permanent restrictions with ladders and unprotected heights. He cannot work on scaffoldings. He cannot work on uneven surfaces. Obviously, squatting with the amount of flexion that he has will be very difficult and he cannot lift more than 30 lb for at least the next two years.

On August 24, 2011, Carla D. Seyler, Plaintiff's vocational rehabilitation expert issued an opinion, stating, "[b]ased on Dr. Rodriguez's opinion, Mr. Cook would not be able to perform his prior work as tugboat Captain. It is my opinion that Mr. Cook is employable, however he has experienced a loss to his wage earning capacity."

### C. Defendant's Independent Medical Examiner Agrees that Plaintiff Cannot Perform the Work of a Tugboat Captain

On September 29, 2011, Plaintiff voluntarily underwent an independent medical examination ("IME") with Dr. Gordon Nutik, Defendant's independent medical examiner. Dr. Nutik concluded that Plaintiff had obtained maximum medical improvement ("MMI"). Dr. Nutik further concluded that Plaintiff could not flex his knee more than 90 degrees, and that he would be restricted from

---

[1] The parties appear to dispute whether it was Plaintiff's right knee or left knee that was injured in the accident.

climbing steep narrow steps, one of the requirements of a tugboat Captain.

### D. Defendant's Request for a Supplemental IME Report

On October 6, 2011, Defendant - apparently unsatisfied with Dr. Nutik's original report - requested Dr. Nutik provide a supplemental IME report further addressing Plaintiff's current physical condition and "whether a functional capacity evaluation would aid in determining Plaintiff's ability to return to work as a tugboat captain." In his supplemental report, Dr. Nutik stated:

> [A] Functional Capacity Evaluation would help in determining Mr. Cook's ability to return to work as the captain of a vessel. I would have concern about the validity of the test, and therapist's do perform certain maneuvers to try and assess whether he is giving full effort during the test. A Functional Capacity Evaluation would have to be ordered by his treating physician.

### E. Defendant's Request for a Functional Capacity Evaluation

As to the instant motion, Defendant seeks an order from this Court requiring Plaintiff to attend a functional capacity evaluation ("FCE") with Mr. Donald Kinnard on November 14, 2011 at 8:30 a.m. In support of its motion, Defendant argues that Plaintiff has claimed that as a result of his injury and subsequent left knee surgery, he cannot return to work as a tugboat captain. Defendant further argues that an FCE is necessary to assist the jury in determining (1) Plaintiff's functional capacity; (2) whether Plaintiff's knee can be rehabilitated; (3) whether Plaintiff can pass a pre-employment physical for the position of tugboat captain; and (4) whether Plaintiff can return to work at his prior level.

In opposition, Plaintiff argues that Defendant is not entitled to an FCE because Plaintiff voluntarily attended an IME, conducted by Defendant's independent medical examiner, Dr. Nutik, and because Dr. Nutik did not indicate that an FCE was necessary. Plaintiff further argues that both Plaintiff's physician and Defendant's independent medical examiner are in agreement that Plaintiff is physically restricted from performing the tasks of a tugboat captain.

3

**II.	Standard of Review**

Federal Rule of Civil Procedure ("Rule") 35 provides in pertinent part that a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. Fed.R.Civ.P. 35(a)(1). The court may issue such an order "on motion for good cause and upon notice to all parties and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed.R.Civ.P. 35(2).

Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*. at 119.

Where "the moving party has already made an examination in the past, . . . the court will require a stronger showing of necessity before it will order repeated examinations." *Mathias v. Omega Protein, Inc.*, No. 10-2835, 2011 WL 1304000, at *3 (E. D. La April 1, 2011) (citing § 8A C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2234 at 475); *Monroe v. Cooper/T. Smith Stevedoring Co., Inc.*, No. 06-933-B-M2, 2008 WL 687196, at *2 (M.D. La. 2008). "The number of examinations ordered should be held to the minimum necessary considering a party's right to privacy and the need for the court to have accurate information." *Monroe v.*

*Cooper/T. Smith Stevedoring Co., Inc.*, 2008 WL 687196, at *2.  Second examinations are appropriate when: (1) there are separate injuries calling for examination by distinct medical specialties; (2) where a physician requires assistance of other consultants before he can render a diagnosis; (3) where the first examination was not adequate or complete; and (4) where a substantial time lag occurred between the initial examination and the trial.  *Mathias v. Omega Protein, Inc.*, 2011 WL 1304000, at *3 (citing *Moore v. Calavar Corp.*, 142 F.R.D. 134, 135 (W.D. La. 1992)).

**III.    Analysis**

In support of its motion, Defendant argues that an FCE is warranted to assist the jury in determining (1) Plaintiff's functional capacity; (2) whether Plaintiff's knee can be rehabilitated; (3) whether Plaintiff can pass a pre-employment physical; and (4) whether Plaintiff can return to work at his prior level.  Defendant further argues that an IME is no substitute for an FCE.  Defendant argues that only an FCE can determine whether Plaintiff can pass a pre-employment physical, meet the requirements for work as an inland push boat captain, and return to work with no loss of earning capacity.

Defendant further argues that an FCE is warranted because this is the second time that Plaintiff has claimed that he cannot return to work as a captain.  Defendant argues that in November 2000, Plaintiff allegedly injured his left knee while working as a tankerman, and later testified that he was unable to return to work as a result of the injury.  Despite this testimony, Plaintiff returned to work and earned his captain's license, and was eventually hired by Defendant.  Defendant argues that because Plaintiff is making a future wage loss claim for the second time for an injury to the same knee, he should be required to undergo an FCE.

5

In opposition, Plaintiff argues that where, as here, the moving party has already made an examination in the past, the court should require a stronger showing of necessity before it will order repeated examinations. Plaintiff emphasizes that Defendant has not cited a case that suggests that making a future wage loss claim for the second time relative to an injury to the same knee is added reason for Plaintiff to undergo an FCE.

Plaintiff further argues that he has already voluntarily undergone an IME with Dr. Nutik, Defendant's independent medical examiner. During that IME, Dr. Nutik physically examined Plaintiff, reviewed his medical records and deposition testimony, and determined that Plaintiff could not return to work on a vessel. Plaintiff further argues that, like Dr. Nutik, Dr. Rodriguez, Plaintiff's treating physician, concluded that Plaintiff cannot return to work on a vessel.[2] Plaintiff further emphasizes that Dr. Nutik's supplemental report said it would "*help*" to have an FCE, but that he had "concern about the validity of the test", and that Plaintiff's treating physician must order the FCE. Plaintiff further argues that he has not retained his own expert to perform an FCE, nor has Dr. Rodriguez ordered an FCE.

Whenever the physical condition of a party is in controversy, the Court may require the party to submit to a physical examination. *Miller v. Chet Morrison Contractors, L.L.C.*, No. 09-5457, 2010 WL 2292157, at *2 (E.D.La. June 2, 2010). Although the party requesting a Rule 35 examination must show good cause, a plaintiff in a negligence action who asserts physical injuries places the extent of those injures in controversy and provides the defense with good cause for an examination. *Id.*

---

[2] Plaintiff argues that he has returned to work in a position that is within the restrictions identified in Dr. Nutik's report and Dr. Rodriguez's treatment plan.

6

Here, Plaintiff has placed his physical condition in controversy by (1) alleging injury to his left knee and loss of function to perform his job as a captain; (2) alleging permanent physical impairment and disfigurement due to the negligence of Defendant; and (3) alleging damages, including medical expenses and lost earnings. Thus, Defendant has met part one of the two-part test for a Rule 35 examination. *See Myers v. Susan, Inc.*, No. 02-0233, 2002 U.S. Dist. LEXIS 17799, at*5 (E.D.La. September 3, 2002) (M.J. Roby).

The Court notes, however, that **both** Defendant's independent medical examiner and Plaintiff's treating physician agree that Plaintiff cannot perform the physical requirements of a tugboat captain. During the hearing, counsel for Defendant acknowledged that **both** Dr. Nutik and Dr. Rodriguez have concluded that Plaintiff cannot return to work as a tugboat Captain. In fact, **both** Dr. Nutik and Dr. Rodriguez concluded that Plaintiff would be restricted from activities which would require him to squat or climb steep narrow steps. While the parties may disagree on the level of Plaintiff's physical impairment, **both** Dr. Nutik and Dr. Rodriguez agree that Plaintiff is physically impaired and cannot return to work as a tugboat Captain.

During the hearing, counsel for Defendant further conceded that **both** Dr. Nutik and Dr. Rodriguez concluded that Plaintiff would be restricted to a light medium job. In fact, Dr. Nutik's September 29, 2011 report states, "I felt that he would be restricted to a *light medium* level of physical activity based on the present examination." (emphasis added). Counsel for Defendant further acknowledged that tugboat Captain is a *medium* duty job.

"One of the purposes of Fed.R.Civ.P. 35 is to level the playing field when a party's physical or mental capacity to engage in gainful employment is at issue." *Bergeron v. Beverly Dredging, LLC, et al.*, No. 08-3753, 2009 WL 1140414, at *2 (E.D.La. April 27, 2009). Here, there is no

playing field to level as Defendant has already physically examined Plaintiff, and Plaintiff has not engaged an expert to perform an FCE which Defendant's expert needs to rebut. *See Miller*, 2010 WL 2292157, at *2 (finding an FCE unnecessary because plaintiff had not retained his own expert to perform an FCE and only intended to use his treating physician as an expert at trial); *Fuller v. U.S.*, No. 00-2791, 2002 WL 287729, at *2 (E.D.La. Feb 26, 2002) (upholding Magistrate Judge's decision denying a motion to compel an FCE where the government had already had the plaintiff physically examined by its expert). In fact, Defendant concedes that its own independent medical examiner concluded that Plaintiff would be restricted to a light medium job, which tugboat Captain is not.

Further, none of the circumstances to justify a second examination of Plaintiff are present here. Defendant has not alleged that (1) there are separate injuries calling for examination by distinct medical specialties; (2) a physician requires assistance of other consultants before he can render a diagnosis; (3) the first examination was not adequate or complete; or (4) that a substantial time lag has occurred. *Mathias v. Omega Protein, Inc.*, 2011 WL 1304000, at *3. Thus, Defendant has not established a stronger showing of necessity for an FCE.

Finally, the Court is not persuaded by Defendant's argument that an FCE is warranted because this is the second time that Plaintiff has testified that he cannot return to work as a result of an injury to his knee. Defendant has not provided the Court with any medical testimony regarding Plaintiff's previous case. In contrast, here, there is unrefuted medical testimony by **both** Defendant's independent medical examiner and Plaintiff's treating physician that Plaintiff is physically impaired and cannot return to work as a tugboat Captain.

For these reasons, the Court concludes that Defendant has not established good cause for an FCE, and thus has not met part two of the two-part test for a Rule 35 examination.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Compel Functional Capacity Evaluation (R. Doc. 17)** is **DENIED**.

New Orleans, Louisiana, this 29th day of November 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**